## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MATTHEW DAVID RYBOLT,

       Petitioner,

v.                                     Case No.: 8:13-CV-65-T-36EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

### ORDER

       Petitioner, an inmate in the Florida Department of Corrections proceeding *pro se*,[1] has filed

a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions

entered in 2007 in the Sixth Judicial Circuit, Pinellas County, Florida.  Respondent filed a response

and Petitioner has filed a reply.  Upon review, the petition must be denied.

**Procedural History**

       Petitioner was charged in Case No. CRC05-01688CFANO[2] with four counts of possession

of cocaine, three counts of sale of cocaine, four counts of sale of a controlled substance, four counts

of possession of a controlled substance, one count of sale of marijuana, one count of possession of

marijuana, one count of trafficking in phenethylamines (MDMA), and one count of armed

---

[1]Although Petitioner was initially represented by counsel, counsel's request to withdraw after filing the reply (Dkt. 14) was granted (see Dkt. 15), and Petitioner has since been proceeding *pro se*.

[2]The record also contains documents concerning two other cases, Case Nos. CRC03-03375CFANO and CRC03-10621CFANO.  It appears that Petitioner admitted violating probation in those cases at the same time he entered a plea in Case No. CRC05-01688CFANO.  (See Dkt. 12, Exs. 12, 13.)  However, Petitioner only references the counts charged in Case No. CRC05-01688CFANO in his habeas petition.  (See Dkt. 1, p. 1.)

trafficking in cocaine.  (Dkt. 12, Ex. 10.)  He entered a plea of guilty to all nineteen counts on June 7, 2007.  (Dkt. 12, Exs. 12, 15.)  The plea agreement included a thirty-year sentencing cap.  (Dkt. 12, Exs. 12, 15.)  At the July 20, 2007 sentencing hearing, the state court sentenced Petitioner to an overall term of thirty years' imprisonment.  (Dkt. 12, Ex. 19.)

Petitioner subsequently filed a motion to withdraw his plea under Florida Rule of Criminal Procedure 3.170, as well as an amended motion to withdraw his plea.  (Dkt. 12, Ex. 20.)[3] Following an evidentiary hearing, the state court denied his motion.  On direct appeal, the state appellate court affirmed the order denying Petitioner's motion to withdraw plea.  (Dkt. 12, Ex. 29.)  Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which the state court summarily denied.  (Dkt. 12, Exs. 32, 33.)  The state appellate court affirmed the order of denial.  (Dkt. 12, Ex. 38.)  Petitioner's subsequent petition alleging ineffective assistance of appellate counsel was denied by the state appellate court.  (Dkt. 12, Exs. 39, 42.)  His successive Rule 3.850 motion was dismissed, and the order of dismissal was affirmed on appeal.  (Dkt. 12, Exs. 43, 47, 51.)  Respondent agrees that this habeas petition is timely filed.

**Standard of Review for Petitions Subject to AEDPA**

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact.  It provides

---

[3]The record reflects that the state court considered Petitioner's amended motion to withdraw plea. Petitioner also filed a second amended motion to withdraw plea, but the state court did not consider it because it was filed without leave of court.  (See Dkt. 12, Ex. 23, pp. 351-52.)

that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such

determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

> The Supreme Court has explained this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Additionally, "the focus ... is on whether the state

court's application of clearly established federal law is objectively unreasonable ... an unreasonable

application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  *See Brown

v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the

correctness *per se*, of the state court decision that we are to decide.").  The phrase "clearly

established Federal law" encompasses only the holdings of the United States Supreme Court "as of

the time of the relevant state court decision."  *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."

*Bell*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using

federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).

A state court's factual findings must also be given deference, and a petitioner bears the burden of overcoming a state court factual determination by clear and convincing evidence. Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion

of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice

but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

**Discussion**

*1.    Petitioner's § 2254 Habeas Petition*

Ground One: "MR. RYBOLT IS ENTITLED TO WITHDRAW HIS PLEA AS HIS PLEA WAS INVOLUNTARILY ENTERED, AND THE STATE COURT'S FINDINGS TO THE CONTRARY ARE CONTRARY TO AND/OR CONSTITUTE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW."

Petitioner raises one claim for relief, asserting that his plea was involuntarily entered. He claims that his plea was involuntary because he relied on counsel's erroneous advice concerning the consequences of his plea. Petitioner argues that counsel informed him that if he entered an open plea with a cap of thirty years, he would not receive the maximum thirty-year sentence and that his actual sentence would be significantly shorter. Petitioner contends that while counsel's advice was not "in the form of an explicit promise" of a shorter sentence, he relied on counsel's representations

about the sentence counsel believed he was likely to receive.  (Dkt. 2, p. 16.)  Therefore, he contends that any understanding on his part that he potentially faced thirty years' imprisonment cannot defeat his claim that counsel's advice resulted in him entering an involuntary plea.  Petitioner further asserts that, absent this erroneous advice, he would have insisted on proceeding to trial rather than entering his plea.  The state court denied Petitioner's motion to withdraw plea, which raised the same arguments.  He claims that the state court's determination that his plea was not involuntary was contrary to clearly established federal law.

Respondent argues that Petitioner's claim is unexhausted and procedurally defaulted because he failed to raise the constitutional dimension of his argument in state court.  Respondent additionally contends that, because Petitioner's claim that the state court improperly denied his motion to withdraw plea is based on state law, the claim cannot provide federal habeas relief and this Court is without jurisdiction to consider it.  Respondent asserts that the state courts have determined Petitioner did not meet the standard necessary to show he was entitled to withdraw his plea under state law, and that such state law determinations must be given deference by a reviewing federal court.

Petitioner contends in his reply that he exhausted the claim of involuntary plea brought in his habeas petition by raising it in his motion to withdraw plea and on appeal, and asserts that a question of involuntary plea invokes a federal constitutional question because a plea involves a waiver of federal constitutional rights.  He claims that the state law cases he cited in his state court pleadings were "rooted in" federal law.

*A. Petitioner's Motion to Withdraw Plea*

Page 7 of  21

Petitioner's claim of involuntary plea was raised in his motion to withdraw plea.  However, the record supports Respondent's assertion that Petitioner failed to exhaust his claim because he did not present the constitutional dimension of his claim to the state court in his motion, or during the evidentiary hearing on his motion. (Dkt. 12, Exs. 20, 23).  Although Petitioner cited federal law on appeal of the order denying his motion to withdraw plea, this does not remedy his failure to raise the federal constitutional question in the state trial court.   Because it was presented to and ruled on by the state trial court only as a matter of state law, the involuntary plea claim as raised in Petitioner's motion to withdraw plea cannot provide federal habeas relief.

Therefore, Petitioner's claim that the involuntary nature of his plea violated his federal constitutional rights was not fairly presented to the state court in his motion to withdraw plea and is unexhausted.  *See Henderson*, 353 F.3d at 891.  State procedural rules would prevent Petitioner from returning to state court and filing another motion to withdraw his plea, or another direct appeal. Accordingly, this claim is procedurally defaulted, and cannot be reviewed absent the applicability of the cause and prejudice or fundamental miscarriage of justice exception.  *See Smith*, 256 F.3d at 1138.   However, Petitioner does not argue or demonstrate that either exception applies here. Additionally, a state court's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.  *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").   Consequently, Petitioner has not established entitlement to relief.

*B. Petitioner's Motion for Postconviction Relief*

Petitioner's claim of involuntary plea is tied to a claim of ineffective assistance of counsel. Although Petitioner centers his federal habeas claim on the assertion of involuntary plea raised in his motion to withdraw plea, he also refers to ineffective assistance of counsel in his federal habeas petition, and asserted in his Rule 3.850 motion that ineffective assistance of counsel resulted in an involuntary plea.[4]   Specifically, the state postconviction court construed ground one(e) of Petitioner's Rule 3.850 motion to present a claim that counsel was ineffective for permitting him to enter an involuntary plea when he believed that he would receive no more than fifteen years' imprisonment.   (Dkt. 12, Ex. 33, p. 155.)   Thus, the state court interpreted Ground one(e) of Petitioner's Rule 3.850 claim, addressed in the context of ineffective assistance of counsel, as raising a claim substantially similar to Petitioner's habeas argument.

In contrast to his motion to withdraw plea, Petitioner specifically argued in his Rule 3.850 motion that his claim that counsel's ineffective assistance resulted in an involuntary plea implicated a federal constitutional question.  (Dkt. 12, Ex. 32, pp. 4, 14.)   On collateral appeal, Petitioner also raised the allegation brought in Ground one(e) of his Rule 3.850 motion.  (Dkt. 12, Ex. 36, pp. 5, 12.) Thus, the claim of ineffective assistance of counsel is exhausted.  Accordingly, the component of Petitioner's claim that counsel's ineffective assistance resulted in his involuntary plea is considered.    Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the

---

[4]Within the involuntary plea claim raised in his habeas petition, Petitioner asserts that counsel was ineffective for misadvising him about the consequences of entering his plea.  He claims that counsel's erroneous advice rendered his plea involuntary.  In his reply, Petitioner emphasizes that his claim is one of involuntary plea, rather than one of ineffective assistance of counsel.  But he also states that in order to show that his plea was involuntary, he has additionally demonstrated that counsel provided ineffective assistance.  (Dkt. 11, p. 2.)

petitioner.  *Id.* at 687.  In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."  *Id.* at 690.  To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  When a petitioner enters a plea, the prejudice inquiry focuses on whether, absent the alleged ineffective assistance, the petitioner would have insisted on proceeding to trial rather than entering his plea.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Counsel is presumed to have provided effective assistance.  *See Strickland*, 466 U.S. at 689-90.  Further, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.  Sustaining a claim of ineffective assistance of counsel is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted).  If a court can dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong.  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

The state court summarily denied ground one(e) of Petitioner's Rule 3.850 motion, finding that it was refuted by the record of the change of plea hearing and the hearing on his motion to

withdraw plea:[5]

> The Defendant next alleges that counsel was ineffective for allowing him to enter an involuntary plea; specifically he believed his sentence would be no more than 15 years in prison.  The Defendant alleges that because he pled with the mistaken belief that his sentence would be no more than 15 years, he should be permitted to withdraw his plea.
>
> The Defendant's claim is refuted from the face of the record.  At the June 7, 2007 Change of Plea Hearing, the Defendant was informed that he faced over a hundred years in prison on all of his charges.  Thereafter, counsel, in the presence of the Defendant, stated that he was willing to enter an open plea in exchange for a sentencing cap of 30 years.  The Defendant was informed that at the sentencing hearing, he would have an opportunity to present mitigating evidence.
>
> Furthermore counsel filed a motion to withdraw plea on December 19, 2007.  In the motion, the Defendant argued that he believed he would only be sentenced to 15 years in prison.  He further claimed that his previous attorney told him that if he did not take the agreement including the 30-year cap, that he would instead be sentenced to life in prison.  The Defendant claimed that he would not have gone forward with the plea if he knew he was going to get more than 15 years.  Based upon the evidence adduced at the September 5, 2008 hearing, the court denied the Defendant's motion.
>
> In the instant motion, the Defendant tries to reargue the merits of his December 19, 2007 motion which was previously denied by the court.  Because the Defendant's claim has been previously denied, the Defendant's attempt to reargue the merits of the claim amounts to an assertion of trial court error, which is not cognizable in a 3.850 motion.  Cook v. State, 792 So. 2d 1197, 1200-01.  For the foregoing reasons, Ground One (e) is denied.

(Dkt. 12, Ex. 33, p. 155) (court's record citations omitted).  The record supports the state court's finding that Petitioner's claim of ineffective assistance of counsel was refuted by the record.  In reaching this conclusion, the state court first relied upon the transcript from the June 7, 2007 change of plea hearing.  At this hearing, the court informed Petitioner that he could be sentenced to 140 years in prison upon conviction on all charges.  (Dkt. 12, Ex. 12, p. 296.)  Additionally, counsel

---

[5] The state court noted that, inasmuch as Petitioner was attempting to argue that the court erred in denying his motion to withdraw plea, such a claim would amount to an assertion of trial court error that would not be cognizable in a postconviction motion.  (Dkt. 12, Ex. 33, p. 155.)  However, its denial of Petitioner's claim on the merits was based on its finding that the record, including the change of plea hearing and the evidentiary hearing on the motion to withdraw plea, refuted Petitioner's claim that counsel's advice rendered his plea involuntary.  (Id.)

informed the court that Petitioner was entering into an open plea with a sentencing cap of thirty

years. (Id., pp. 299-300.) During the plea colloquy, Petitioner told the court under oath that he was

satisfied with counsel's advice. (Id., p. 303.) He also indicated that he based his decision "upon

[his] best option." (Id., p. 301.) The court found that Petitioner's plea was entered freely and

voluntarily and with the advice of competent counsel with whom Petitioner expressed satisfaction.

(Id., p. 311.)

The record reflects that Petitioner understood that he faced 140 years' imprisonment, and that

he was entering into an open plea with a cap of thirty years. Therefore, he was aware of the possible

maximum sentence upon proceeding to trial, or upon entering an open plea. Petitioner also indicated

an understanding that it was in his best interest to plead guilty, and stated that he was satisfied with

counsel's advice. Additionally, the state court found Petitioner's plea to be freely and voluntarily

entered. Accordingly, this portion of the record supports the state court's finding that counsel did

not provide ineffective assistance.

In reaching its conclusion on Petitioner's ineffective assistance of counsel claim, the state

court also considered that Petitioner's motion to withdraw plea was denied based upon the testimony

presented at the evidentiary hearing. The state court also determined that this refuted Petitioner's

claim of ineffective assistance of counsel. Specifically, the order cited to the portion of the

evidentiary hearing where the state court reviewed Petitioner's motion in detail and gave its reasons

for denial.

The state court reached numerous conclusions at the evidentiary hearing that were relevant

to its ruling on Petitioner's 3.850 claim. First, the court rejected Petitioner's claim that he had been

told he would not receive the thirty-year cap to be contrary to the change of plea and determined that

counsel's opinion about the sentence did not amount to a guarantee.  (Dkt. 12, Ex. 23, p. 439.)[6]

Additionally, the court rejected  Petitioner's claim that he was told he would receive life if he did

not accept the plea offer because Petitioner knew he had the option of proceeding to trial, and

recalled during the evidentiary hearing that he faced up to 140 years in prison if convicted.  (Id., pp.

439-40.)[7]  The court also determined that the evidence did not support Petitioner's claim that he

entered his plea under coercion of counsel and duress.  The court concluded that there was a lack

of evidence on this claim regarding trial counsel, and that Petitioner indicated trial counsel did not

coerce him or put him under duress.  (Id., p. 440.)[8]

The court also determined that Petitioner's claim that his lack of choice served to challenge

the voluntariness of his plea was defeated by his admission that entering the plea was his decision.

(Id., pp. 440-41.)[9]  As to Petitioner's claim that he did not understand he could be sentenced to more

than fifteen years and he did not feel comfortable with his decision to enter a plea, the court noted

that it did not hear anything at the change of plea indicating Petitioner was uncomfortable, and that

---

[6]Counsel testified at the evidentiary hearing that he explained to Petitioner that a thirty-year cap would be a part of the plea deal.  (Dkt. 12, Ex. 23, pp. 371-72.)  Counsel further testified that he told Petitioner he believed Petitioner would likely receive a sentence of approximately fifteen years.  (Id., pp. 372-73, 374.)  Counsel testified that he did not make any promises to Petitioner about what sentence he might receive and did not promise Petitioner that he would not get thirty years.  (Id., pp. 374-75, 383.)

[7]Petitioner testified at the change of plea hearing that he understood he was giving up his right to proceed to trial and that no one was forcing him to plead guilty.  (Dkt. 12, Ex. 12, pp. 300-01.)  Petitioner also testified at the evidentiary hearing that he remembered he faced 140 years' imprisonment.  (Dkt. 12, Ex. 23, p. 419.)

[8]Petitioner testified at the evidentiary hearing that counsel did not promise him anything prior to sentencing.  (Dkt. 12, Ex. 23, pp. 401, 405, 423.)  He further testified that "[Counsel] didn't say, 'I promise you will not get 30 years.'  No.  He never said - - he never promised me."  (Id., p. 403.)  Counsel testified at the evidentiary hearing that he conveyed his opinion about the likely sentence to Petitioner, but that whether to go to trial or accept the plea offer was Petitioner's choice.  (Id., p. 384.)

[9]During the evidentiary hearing, Petitioner acknowledged the portion of the sentencing hearing where he told the court that he pled because he believed it was the best decision.  (Dkt. 12, Ex. 23, pp. 420, 422.)  He also recalled telling the court at the change of plea hearing that he based his decision on his best option.  (Id., p. 426.)

his claim had not been established by the evidence because Petitioner testified that he did not recollect the change of plea hearing. (Id., p. 444.)[10] Lastly, the court rejected Petitioner's claim that he would not have gone forward with the plea had he known he could receive a sentence other than that which he believed was promised to him.  The court concluded that this was contrary to the evidence in that Petitioner indicated that counsel gave advice, but did not make promises or threats, and that Petitioner understood there was a thirty-year cap when he entered the plea.  (Id., pp. 444-45.)  At the conclusion of this review, the court orally denied the motion to withdraw plea.  (Id., p. 445.)[11]

In evaluating Petitioner's Rule 3.850 motion, the state court cited this portion of the proceedings in support of its conclusion that the record refuted Petitioner's ineffective assistance of counsel claim.  The record supports the state court's finding that counsel did not provide ineffective assistance by misadvising Petitioner about the sentence he would likely receive.  Moreover, even assuming that counsel had incorrectly informed Petitioner about the sentence he would receive, an inaccurate prediction about sentencing is generally insufficient to sustain a claim of ineffective assistance of counsel.  *See United States v. Himick*, 139 Fed.Appx. 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence.");  *United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting argument by defendant sentenced as a career offender that his plea was not knowing and

---

[10]Petitioner testified that he did not remember much about the day of his change of plea hearing because on that date he took medications given to him by another inmate.  (Dkt. 12, Ex. 23, pp. 397-98.)

[11]The state court later entered a written order of denial, in which it concluded that "[a]s delineated on the record at the conclusion of the evidentiary hearing, the Defendant failed to demonstrate sufficient evidence that would warrant him to withdraw his previously entered plea ...."  (Dkt. 12, Ex. 24, p. 1.)

voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years when, in fact, he faced a ten-year minimum mandatory sentence).  Furthermore, under *Strickland*, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).  Petitioner has not shown deficient performance by counsel.

Accordingly, Petitioner's argument that counsel's ineffective assistance rendered his plea involuntary must fail.  Furthermore, "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).  Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [at a plea hearing], his lawyer ... as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Petitioner does not challenge the validity of his plea colloquy and fails to establish that he

involuntarily entered the plea as a result of ineffective assistance of counsel. Petitioner's sworn statements at the plea colloquy reflect that he was entering the plea because he believed that doing so was his best option, that he understood the charges against him, and that he understood the consequences of entering the plea, including that fact that he was entering an open plea with a thirty-year cap, without which he faced 140 years in prison. Petitioner does not show that he was coerced into entering the plea or otherwise did not want to proceed by entering a plea, or that his statements to the court were incorrect. He cannot overcome the strong presumption that his sworn statements during the plea colloquy were accurate. *See Blackledge*, 431 U.S. at 73-74. Petitioner has failed to show that ineffective assistance of counsel resulted in an involuntary plea. Therefore, he does not demonstrate that the state court's finding was contrary to or an unreasonable application of clearly established federal law. Consequently, Petitioner is not entitled to relief.

2. *Petitioner's "Motion to Relate Back to and/or Supplement Pending § 2254 Petition"*

Petitioner has also filed a "Motion to Relate Back to and/or to Supplement Pending § 2254 Petition" (Dkt. 16), in which he seeks to supplement his reply with additional information about his claim that he asserts he recently discovered. He includes this information in his motion.[12] The motion is granted to the extent the court will consider the information presented in the motion.[13] However, inasmuch as Petitioner merely attempts to clarify the claim raised in his habeas petition, he presents no additional information showing entitlement to relief.

_____

[12]"Rybolt now requests this Court to accept *the following* as relating back to and/or to supplement facts and argument in support of a lawful basis for relief on the pending § 2254 petition.") (Dkt. 16, p. 2) (emphasis added).

[13]Respondent's motion for extension of time to respond to Petitioner's motion to relate back (Dkt. 17) and motion for leave to file response to Petitioner's motion to relate back (Dkt. 19) are accordingly denied as moot. Furthermore, Petitioner's motion for default (Dkt. 21), in which he asserts that Respondent did not timely respond to his motion to relate back, is denied. Respondent's motion to deny request for default judgment and for leave to file response (Dkt. 20) is granted to the extent that Petitioner's request for default has been denied, and is denied as moot to the extent that Respondent seeks leave to file a response.

Petitioner's motion to relate back also appears to contain a new claim that the trial court erred at his sentencing hearing by not giving "deference" to his claims that he did not possess a weapon as to count nineteen, armed trafficking in cocaine.[14]   This claim of trial court error is untimely and cannot be considered on review of the federal habeas petition.[15]   Even if the claim was

---

[14]At the sentencing hearing, Petitioner told the state court that he did not possess a weapon.  (Dkt. 12, Ex. 16, pp. 206, 213, 219, 220, 221, 223.)

[15]To the extent Petitioner's motion could be treated as an amended petition, his additional potential claims are time-barred.  Because a federal petition does not toll the one-year time limitation, *Duncan v. Walker*, 533 U.S. 167 (2001), an additional claim might be untimely even though the original petition is timely.  If the one-year period to file a habeas petition has expired before an amended petition is filed, any additional claim is untimely unless it "relates back" to the original petition.  *See* Fed. R. Civ. P. 15(c)(1)(B); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).  Petitioner's new claims do not relate back to the claim raised in his petition and, consequently, must be timely filed in order to be considered.

Here, it appears that the appellate court treated Petitioner's appeal of the order denying his motion to withdraw plea as a direct appeal, because it docketed the appeal as regarding the "Final Criminal Judgment and Sentence Notice from Pinellas County."  (Dkt. 12, Ex. 29.)  It entered its opinion on January 15, 2010.  (Id.)  Therefore, Petitioner's convictions became final on April 15, 2010, when the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court expired.  *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002); Sup. Ct. R. 13.3.  The one-year time limit to file a federal habeas petition under 28 U.S.C. § 2244(d) began the next day, April 16, 2010.  The statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending ...." 28 U.S.C. 2244(d)(2).

A total of forty-one days of un-tolled time ran before Petitioner filed a petition for belated appeal on May 26, 2010.  (Dkt. 12, Ex. 30.)  This petition was dismissed on July 15, 2010.  (Dkt. 12, Ex. 31.)  Another sixty-two days of un-tolled time passed before Petitioner filed his Rule 3.850 motion on September 15, 2010.  (Dkt. 12, Ex. 32.)  The appellate court entered its mandate affirming the denial of this motion on April 4, 2012.  (Dkt. 12, Ex. 38.)  Because Petitioner had in the meantime filed a successive Rule 3.850 motion (Dkt. 12, Ex. 44), tolling continued until the resolution of that motion on appeal.  The state appellate court affirmed the order dismissing Petitioner's successive Rule 3.850 motion, and its mandate issued on March 12, 2013.  (Dkt. 12, Ex. 51.)

Therefore, a total of 103 days of un-tolled time passed before Petitioner filed his federal habeas petition on January 7, 2013.  Petitioner had 262 more days of his one-year time limitation from the date of the mandate on his successive postconviction motion.  His limitations period ran until November 29, 2013.  However, his motion to relate back was filed after this date, on July 23, 2014.  The Court notes that, in his motion to relate back, Petitioner asserts that he has attempted to pursue his claim in what appears to be another successive motion for postconviction relief.  He attaches a portion of this motion, but it does not include any date stamp indicating when it was provided to prison officials for mailing or filed with the state court.  Therefore, Petitioner does not show that it was filed prior to the expiration of the statute of limitations and therefore provided tolling.  Once the statute of limitations has run, even an otherwise "properly filed" petition for relief does not reset or restart the limitations period.  *See Moore v. Crosby*, 321 F.3d 1377, 1379-1381 (11th Cir. 2003).  Moreover, given that Petitioner's two-year period to file under Rule 3.850 began to run on February 5, 2010, when the mandate issued following his direct appeal (see Dkt. 12, Ex. 29), it appears that any motion filed after his first successive Rule 3.850 motion was resolved would be untimely under state rules.  *See Beaty v. State*, 701 So.2d 856 (Fla. 1997) (holding that the two-year period to file a Rule 3.850 motion begins to run upon the issuance of the state appellate court's mandate on direct appeal).  An untimely motion would not constitute a "properly filed" collateral motion that would toll the federal habeas limitations period.  *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005).  Finally, even assuming that Petitioner's new claims could be considered timely, they are otherwise procedurally defaulted and thus cannot be considered on the merits.

timely, it would be unexhausted because Petitioner did not raise this specific allegation of trial court error on direct appeal. (Dkt. 12, Exs. 26, 28.) State procedural rules do not provide for successive direct appeals. Consequently, this claim would be procedurally defaulted. Petitioner has not demonstrated that either the cause and prejudice or fundamental miscarriage of justice exception would apply to overcome the default. This claim is not eligible for review on the merits.

Finally, Petitioner also asserts that he is actually innocent of the armed trafficking charge because he did not possess a weapon. As a preliminary matter, to the extent that Petitioner attempts to present a new claim for relief by asserting actual innocence, this claim would be untimely and would also be unexhausted and procedurally barred because it was not raised on direct appeal. Furthermore, his claim of actual innocence would not be cognizable in this federal habeas petition because it does not allege any federal constitutional violation.[16] Rather, a claim of actual innocence can serve as a gateway for a petitioner to present other federal constitutional claims that are otherwise procedurally barred. *See Schlup*, 513 U.S. at 315 (A "claim of innocence is ... 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

A procedurally defaulted claim can be considered in a § 2254 habeas petition if a petitioner

---

[16]While Petitioner argues that he is actually innocent of the armed trafficking charge because he did not possess a weapon, it is noted that it is not clear how Petitioner's sentence would change even if he could raise actual innocence of the armed trafficking charge as a substantive claim for federal habeas review and demonstrate his innocence. Petitioner was sentenced to thirty years' imprisonment on the count of armed trafficking in cocaine, which was charged as count nineteen. (Dkt. 12, Ex. 19, pp. 320, 340.) But Petitioner was also given a concurrent thirty-year sentence for the charge of trafficking in MDMA that was charged in count sixteen. (Dkt. 12, Ex. 19, pp. 320, 337.) Because the basis of Petitioner's actual innocence claim is that he did not have a weapon, it does not appear that Petitioner asserts actual innocence on count sixteen, as that count does not involve any weapon component. (Dkt. 12, Ex. 10, p. 241.) Thus, even if Petitioner was able to demonstrate actual innocence as to count nineteen, he would still be serving a thirty-year sentence for trafficking on count sixteen.

can demonstrate that the fundamental miscarriage of justice exception applies. *Smith*, 256 F.3d at 1138. Under this exception, a procedurally defaulted claim may be reviewed if a constitutional violation has likely resulted in the conviction of someone who is actually innocent. *Schlup*, 513 U.S. at 327. However, to the extent Petitioner's claim of actual innocence may be construed as an attempt to overcome the procedural default of any of Petitioner's other claims by invoking the fundamental miscarriage of justice exception, he is not entitled to relief. To establish the applicability of this exception, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Id.* Moreover, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* at 324.

Petitioner has not met this burden. He does not offer any evidence of actual innocence beyond his own assertions that he did not possess a weapon, which he made to the state court at his sentencing hearing. Accordingly, his claim of actual innocence cannot serve to excuse the procedural default of his habeas claims. Petitioner has not shown entitlement to relief on any of his claims.

Accordingly, it is **ORDERED** that Petitioner's "Motion to Relate Back to and/or to Supplement Pending § 2254 Petition" (Dkt. 16) is **GRANTED**, and Respondent's motion for extension of time to respond to Petitioner's motion to relate back (Dkt. 17) and motion for leave to file response to Petitioner's motion to relate back (Dkt. 19) are **DENIED** as moot. It is further **ORDERED** that Petitioner's motion for default (Dkt. 21) is **DENIED**, and Respondent's motion to deny request for default judgment and for leave to file response (Dkt. 20) is **GRANTED** to the

extent that Petitioner's request for default has been denied, and is **DENIED** as moot to the extent that Respondent seeks leave to file a response.

It is further **ORDERED AND ADJUDGED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is instructed to enter judgment against Petitioner and close this case.

It is further ordered that Petitioner is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made this showing.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on November 4, 2014.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copy furnished to:
*Pro se* Petitioner
Counsel of Record